[No. S030160. Nov. 10, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
DEBRA JEANIE ROMERO, Defendant and Appellant.

In re DEBRA JEANIE ROMERO on Habeas Corpus.

**COUNSEL**

Joan Temko Anyon, under appointment by the Supreme Court, and Jill M. Bojarski, under appointment by the Court of Appeal, for Defendant and Appellant and for Petitioner.

James S. Thomson and Cliff Gardner as Amici Curiae on behalf of Defendant and Appellant and Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter, William V. Ballough and Leslie P. McElroy, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KENNARD, J.**—May an appellate court, when presented with a petition for a writ of habeas corpus, grant the relief requested in the petition (here, vacating a judgment of conviction for five felonies) without first issuing a writ of habeas corpus or an order to show cause? We conclude, for the reasons set forth below, that it may not.

I

Charged by information with one count of robbery (Pen. Code, § 211) and four counts of attempted robbery (*id.*, §§ 211, 664), Debra Jeanie Romero (petitioner) relied at trial on a defense of duress. Testifying in her own behalf, petitioner admitted participating in each of the charged offenses but said she had done so only because codefendant Terrance Romero had beaten

her and threatened her life. The jury convicted petitioner of each of the charged offenses; in addition, it found, for purposes of sentence enhancement, that petitioner or her codefendant had been armed with a firearm during the robbery and two of the attempted robberies (*id.*, § 12022, subd. (a)). The trial court denied probation and sentenced petitioner to a term of five years and eight months in state prison.

Petitioner appealed from the judgment of conviction and also petitioned the Court of Appeal for a writ of habeas corpus. In the habeas corpus petition, petitioner alleged that her trial attorney had failed to investigate and present expert testimony about "battered woman syndrome" (BWS),[1] that a reasonably competent and diligent advocate would have investigated and presented evidence of BWS, and that there is a reasonable probability the jury would have acquitted her had her attorney presented BWS evidence during the trial. On the basis of these allegations, petitioner contended that she had been denied her constitutional right to effective assistance of counsel at trial.

Petitioner submitted three declarations in support of the petition. The first was by petitioner herself. She declared that during trial preparation she had explained to her trial attorney that she had participated in the robbery attempts only out of fear of her codefendant, who had beaten and abused her, and that her trial attorney had never explained BWS to her or requested that she be evaluated for BWS. The second declaration, by petitioner's appellate counsel, recounted a conversation with petitioner's trial attorney during which the trial attorney reportedly said he had considered presenting BWS evidence and to this end had attempted to contact an expert but was never able to get in touch with the expert before trial. The third declaration was by a marriage and family counselor specializing in the problems of women battered by their partners. The counselor declared that if the facts of this case had been presented to him before trial, he would have recommended an evaluation and investigation to determine whether petitioner was suffering from BWS.

The Court of Appeal ordered that petitioner's habeas corpus petition be considered concurrently with her appeal from the judgment of conviction,

---

[1]BWS has been defined as "a series of common characteristics that appear in women who are abused physically and psychologically over an extended period of time by the dominant male figure in their lives." (*State* v. *Kelly* (1984) 97 N.J. 178, 193 [478 A.2d 364, 371]; see also *People* v. *Aris* (1989) 215 Cal.App.3d 1178, 1194 [264 Cal.Rptr. 167] [" 'a pattern of psychological symptoms that develop after somebody has lived in a battering relationship' "]; Note, *Battered Women Who Kill Their Abusers* (1993) 106 Harv.L.Rev. 1574, 1578 ["a 'pattern of responses and perceptions presumed to be characteristic of women who have been subjected to continuous physical abuse by their mate[s]' "].)

and it directed that any opposition to the petition be submitted within 20 days (see Cal. Rules of Court, rule 60).[2] Within the specified time, the Attorney General, as counsel for the Director of Corrections (respondent in the habeas corpus proceeding), submitted a letter brief arguing that although BWS evidence could be used in connection with a claim of self-defense, it was not admissible in support of a claim of duress. Alternatively, the Attorney General argued that if BWS was admissible in support of a duress defense, this represented a new development in the law and petitioner's trial attorney should not be held to have performed inadequately merely because he had failed to anticipate this new development. Petitioner replied to these arguments by letter brief, and the Director of Corrections (hereafter respondent) submitted a response to petitioner's reply.

The Court of Appeal asked the parties to tell the court whether they desired oral argument on the appeal and petition. Petitioner requested argument on the petition but not the appeal. Respondent submitted a written waiver of and did not appear for oral argument, at which petitioner's counsel argued in support of the contention raised in the habeas corpus petition. Thereafter, the Court of Appeal issued an opinion reversing petitioner's judgment of conviction on the ground stated in the habeas corpus petition; it dismissed the appeal as moot. Respondent petitioned for rehearing, arguing that the Court of Appeal had erred in bypassing established procedural requirements for granting relief in habeas corpus matters. The Court of Appeal denied the rehearing petition, noting in the order denying rehearing that petitioner had supported the allegations of her habeas corpus petition with "a detailed declaration offering admissible evidence in the form of trial counsel's admissions, which were dispositive of the issue." The court declared that "there was no evidence for the People to present and nothing would have been added by the issuance of an order to show cause."

We granted respondent's petition for review, ordering that "[t]he issue to be argued before this court shall be limited to whether a writ of habeas corpus or an order to show cause must issue before a petition for writ of habeas corpus is granted."

## II

The writ of habeas corpus was developed under the common law of England " 'as a legal process designed and employed to give summary relief

---

[2]The order read: "The defendant having filed a petition for writ of habeas corpus on August 3, 1992 (B068893), it is ordered that said petition be considered concurrently with the above entitled appeal (B051210). [¶] Opposition to the petition for writ of habeas corpus shall be served and filed within 20 days of the date of the filing of this order. Any reply by petitioner must be served and filed within 15 days of the filing of the respondent's opposition."

against illegal restraint of personal liberty.' " (Wilkes, Federal and State Postconviction Remedies and Relief (1992) § 2-2, p. 42, quoting 2 Spelling, A Treatise on Injunctions and Other Extraordinary Remedies (1901) § 1152, p. 977.) It continues to serve this purpose today under our law. (See Pen. Code, § 1473, subd. (a) ["Every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment or restraint."].)[3]

The state Constitution grants original jurisdiction in habeas corpus matters to this court and to "the courts of appeal, superior courts, and their judges." (Cal. Const., art. VI, § 10.) ■ In exercising this original jurisdiction, the Courts of Appeal "must abide by the procedures set forth in Penal Code sections 1473 through 1508." (*Adoption of Alexander S.* (1988) 44 Cal.3d 857, 865 [245 Cal.Rptr. 1, 750 P.2d 778].)

■ A habeas corpus proceeding begins with the filing of a verified petition for a writ of habeas corpus. The petition "must allege unlawful restraint, name the person by whom the petitioner is so restrained, and specify the facts on which [the petitioner] bases his [or her] claim that the restraint is unlawful." (*In re Lawler* (1979) 23 Cal.3d 190, 194 [151 Cal.Rptr. 833, 588 P.2d 1257]; see Pen. Code, § 1474.) When presented with a petition for a writ of habeas corpus, a court must first determine whether the petition states a prima facie case for relief—that is, whether it states facts that, if true, entitle the petitioner to relief—and also whether the stated claims are for any reason procedurally barred. (*In re Clark* (1993) 5 Cal.4th 750, 769, fn. 9 [21 Cal.Rptr.2d 509, 855 P.2d 729].) To assist the court in determining the petition's sufficiency, the court may request an informal response from the petitioner's custodian or the real party in interest. (See Cal. Rules of Court, rule 60; *In re Williams* (1994) 7 Cal.4th 572, 586-587 [29 Cal.Rptr.2d 64, 870 P.2d 1072].)

■ If the court determines that the petition does not state a prima facie case for relief or that the claims are all procedurally barred, the court will deny the petition outright, such dispositions being commonly referred to as "summary denials." (*In re Clark, supra,* 5 Cal.4th 750, 769, fn. 9.) When, on the other hand, a habeas corpus petition is sufficient on its face (that is, the petition states a prima facie case on a claim that is not procedurally barred), the court is obligated by statute to issue a writ of habeas corpus. In the language of the Penal Code, "[a]ny court or judge authorized to grant the

---

[3]Through a habeas corpus proceeding, a court may grant relief from various forms of constructive custody, as well as from physical restraints. (See *In re Smiley* (1967) 66 Cal.2d 606, 612 [58 Cal.Rptr. 579, 427 P.2d 179]; *In re Wessley W.* (1981) 125 Cal.App.3d 240, 246 [181 Cal.Rptr. 401].)

writ . . . must, if it appears that the writ ought to issue, grant the same without delay . . . ." (Pen. Code, § 1476.)

The role that the writ of habeas corpus plays is largely procedural. It "does not decide the issues and cannot itself require the final release of the petitioner." (*People* v. *Getty* (1975) 50 Cal.App.3d 101, 110 [123 Cal.Rptr. 704].) Rather, the writ commands the person having custody of the petitioner to bring the petitioner[4] "before the court or judge before whom the writ is returnable" (Pen. Code, § 1477), except under specified conditions (*id.*, §§ 1481-1482), and to submit a written return justifying the petitioner's imprisonment or other restraint on the petitioner's liberty (*id.*, § 1480).

Judicial practice and decisions of this court have authorized one deviation from the procedure specified in the Penal Code. Because "appellate courts are not equipped to have prisoners brought before them . . . this court and the Courts of Appeal developed the practice of ordering the custodian to show cause why the relief sought should not be granted." (*In re Hochberg* (1970) 2 Cal.3d 870, 873-874, fn. 2 [87 Cal.Rptr. 681, 471 P.2d 1]; see also *In re Clark, supra,* 5 Cal.4th 750, 771, fn. 10; *In re Lawler, supra,* 23 Cal.3d 190, 194.) When used as a substitute for the writ of habeas corpus, the order to show cause "directs the respondent custodian to serve and file a written return." (*In re Hochberg, supra,* at p. 874, fn. 2.) Many superior courts have likewise adopted the practice of issuing an order to show cause in place of the writ of habeas corpus when a habeas corpus petition states a prima facie case for relief. (*Ibid.*; see also Cal. Rules of Court, rule 260(a).)[5]

 Thus, the petition serves primarily to launch the judicial inquiry into the legality of the restraints on the petitioner's personal liberty: "The function of the petition is to secure the issuance of the writ, and, when the writ is issued, the petition has accomplished its purpose." (*Ex parte Collins* (1907) 151 Cal. 340, 342 [90 P. 827]; accord, *In re Egan* (1944) 24 Cal.2d 323, 330 [149 P.2d 693].) In addition to securing issuance of the writ, the petition states the grounds for the claimed illegality of the restraints on the petitioner's liberty, and the return must be responsive to these grounds. (*People* v. *Pacini* (1981) 120 Cal.App.3d 877, 883-884 [174 Cal.Rptr. 820].)

 The return, which must allege facts establishing the legality of the petitioner's custody, "becomes the principal pleading" (*In re Lawler, supra,*

---

[4]The writ of habeas corpus "gets its name from the portion of the writ commanding the custodian to *have the body* (*habeas corpus,* in Latin) of the detained person before the court or judge at the time specified in the writ." (Wilkes, Federal and State Postconviction Remedies and Relief, *supra,* § 2-2, p. 44, italics in original.)

[5]English courts have used the order to show cause as a substitute for the writ of habeas corpus since approximately the beginning of the 19th century. (Wilkes, Federal and State Postconviction Remedies and Relief, *supra,* § 2-2, p. 44.)

23 Cal.3d 190, 194) and is "analogous to the complaint in a civil proceeding" (*In re Saunders* (1970) 2 Cal.3d 1033, 1047 [88 Cal.Rptr. 633, 472 P.2d 921]; accord, *In re Sixto* (1989) 48 Cal.3d 1247, 1252 [259 Cal.Rptr. 491, 774 P.2d 164]; *In re Lewallen* (1979) 23 Cal.3d 274, 277 [152 Cal.Rptr. 528, 590 P.2d 383, 100 A.L.R.3d 823]).[6] Thus, the return "is an essential part of the scheme" by which relief is granted in a habeas corpus proceeding. (*People* v. *Getty, supra,* 50 Cal.App.3d 101, 110.)

■ Upon the submission of the written return, the petitioner "may deny or controvert any of the material facts or matters set forth in the return, or except to the sufficiency thereof, or allege any fact to show either that his imprisonment or detention is unlawful, or that he is entitled to his discharge." (Pen. Code, § 1484.) The petitioner's response to the return, commonly known as the traverse, may incorporate the allegations of the petition. (*In re Lewallen, supra,* 23 Cal.3d 274, 277.) Any allegation of the return not controverted by the traverse is deemed admitted. (*Id.,* at p. 277.) The traverse is analogous to the answer in a civil proceeding. (*In re Saunders, supra,* 2 Cal.3d 1033, 1047-1048.) Thus, it is through the return and the traverse that the issues are joined in a habeas corpus proceeding. (*In re Sixto, supra,* 48 Cal.3d 1247, 1252; *In re Lewallen, supra,* at p. 278; *In re Saunders, supra,* 2 Cal.3d at p. 1047.)

■ Once the issues have been joined in this way, the court must determine whether an evidentiary hearing is needed. If the written return admits allegations in the petition that, if true, justify the relief sought, the court may grant relief without an evidentiary hearing. (*In re Fields* (1990) 51 Cal.3d 1063, 1070, fn. 2 [275 Cal.Rptr. 384, 800 P.2d 862]; *In re Sixto, supra,* 48 Cal.3d 1247, 1252; *In re Saunders, supra,* 2 Cal.3d 1033, 1047-1048; see, e.g., *People* v. *Frierson* (1979) 25 Cal.3d 142, 160 [158 Cal.Rptr. 281, 599 P.2d 587]; *In re Haygood* (1975) 14 Cal.3d 802, 805 [122 Cal.Rptr. 760, 537 P.2d 880].) Conversely, consideration of the written return and matters of record may persuade the court that the contentions advanced in the petition lack merit, in which event the court may deny the petition without an evidentiary hearing. (See, e.g., *People* v. *Karis* (1988) 46 Cal.3d 612, 653-657 [250 Cal.Rptr. 659, 758 P.2d 1189]; *People* v. *Babbitt* (1988) 45 Cal.3d 660, 707-708 [248 Cal.Rptr. 69, 755 P.2d 253].) Finally, if the return and traverse reveal that petitioner's entitlement to relief hinges on the

---

[6]The return is like a complaint in being the central pleading in the action, to which another pleading must respond, but it is unlike a complaint in other important respects. As we have already noted, a return must be responsive to the allegations of the petition (*People* v. *Pacini, supra,* 120 Cal.App.3d 877, 884), whereas a complaint is generally not responsive to any other document. Also, a complaint generally seeks to alter the existing state of affairs by obtaining some form of judicial relief, whereas a return seeks to defend and preserve the status quo and to avoid any judicial relief.

resolution of factual disputes, then the court should order an evidentiary hearing. (Pen. Code, § 1484.) Because appellate courts are ill-suited to conduct evidentiary hearings, it is customary for appellate courts to appoint a referee to take evidence and make recommendations as to the resolution of disputed factual issues. (See *In re Fields, supra,* 51 Cal.3d 1063, 1068; *In re Mooney* (1937) 10 Cal.2d 1, 15 [73 P.2d 554].) Alternatively, an appellate court may specify in the order to show cause that the return is to be filed in the superior court. (See Pen. Code, § 1508.) This effectively transfers the proceeding to the superior court, and that court will conduct any evidentiary hearing that may be required. After the evidentiary hearing, the court in which the return has been filed will then either grant or deny relief based upon the law and the facts as so determined.

█ As this summary of habeas corpus procedure reveals, issuance of a writ of habeas corpus or an order to show cause is an intermediate but nonetheless vital step in the process of determining whether the court should grant the affirmative relief that the petitioner has requested. The function of the writ or order is to "institute a proceeding in which issues of fact are to be framed and decided." (*In re Hochberg, supra,* 2 Cal.3d 870, 876, fn. 4, italics omitted.) The issuance of either the writ of habeas corpus or the order to show cause creates a "cause," thereby triggering the state constitutional requirement that the cause be resolved "in writing with reasons stated" (Cal. Const., art. VI, § 14; see *People* v. *Pacini, supra,* 120 Cal.App.3d 877, 884). Thus, the writ or order is the means by which issues are joined (through the return and traverse) and the need for an evidentiary hearing determined.

As the means by which a judicial proceeding is instituted, the issuance of the writ (or order to show cause) is mandatory, not optional. Penal Code section 1476 states that "[a]ny court or judge authorized to grant the writ, to whom a petition therefor is presented, . . . *must,* if it appear that the writ ought to issue, grant the same without delay . . . ." (Italics added.) This court has confirmed this statutory command: "[I]f a petition for habeas corpus makes a prima facie showing, then the opposing side *must* be given an opportunity to file a return to the petition."[7] (*Adoption of Alexander S., supra,* 44 Cal.3d 857, 865, italics added; see also *In re Sixto, supra,* 48 Cal.3d 1247, 1251-1252; *In re Lawler, supra,* 23 Cal.3d 190, 194; *People* v. *Getty, supra,* 50 Cal.App.3d 101, 110-111.)

█ Petitioner contends, contrary to the statutory language and the decisions of this court, that a court may grant relief without issuing a writ of

---

[7]The right to file a return in a habeas corpus proceeding is subject to waiver. Upon being served with a copy of the petition, or upon receiving a request from the court for informal opposition under rule 60 of the California Rules of Court, the petitioner's custodian may stipulate to the truth of the petition's allegations and to the requested relief. Should this occur, the court in which the habeas corpus petition is pending may grant relief without issuing a writ of habeas corpus or an order to show cause.

habeas corpus or an order to show cause because the informal response authorized by rule 60 of the California Rules of Court (rule 60) may substitute for the return. We reject this contention.

Rule 60 provides: "When a petition for a writ of habeas corpus is filed in a reviewing court, seeking the release from or modification of conditions of custody of one who is confined under the process of any court of this state, the court may, before passing on the petition . . . request an informal response from the respondent or real party in interest. The informal response shall be in writing and shall be served and filed within 15 days, or the time specified by the court in the request. A copy of the request shall be sent to the petitioner, and the informal response shall be served upon the petitioner. If an informal response is filed, the court shall notify the petitioner that he or she may reply to the informal response within 15 days or a time specified by the court, and the petition shall not be denied until that time has expired."

Before 1984, there was no authority for the "informal response" procedure. In a 1983 opinion, this court observed that some appellate courts on their own initiative had adopted a practice of soliciting an informal response to the habeas corpus petition, sometimes without giving the petitioner notice or an opportunity to reply. (*In re Ibarra* (1983) 34 Cal.3d 277, 283, fn. 2 [193 Cal.Rptr. 538, 666 P.2d 980]; see also, *People* v. *Pacini, supra,* 120 Cal.App.3d 877, 886; *Reaves* v. *Superior Court* (1971) 22 Cal.App.3d 587, 596 [99 Cal.Rptr. 156].) We remarked that denial of a petition based on factual assertions in an informal response might violate due process if the petitioner was afforded no opportunity to challenge the assertions. (*In re Ibarra, supra,* at p. 283, fn. 2.) In 1984, rule 60, which previously had authorized appellate courts to obtain pertinent records when presented with a habeas corpus petition, was amended to authorize the "informal response" procedure and to require, in accordance with the statements of this court, that the petitioner be served with the informal response and given an opportunity to reply.[8]

We find no evidence that the authors of the 1984 amendment of rule 60 intended that the informal response procedure could serve as a substitute for the formal return and traverse, nor is the language of the rule hospitable to such a construction. The term "informal" by itself implies that the rule 60 response is not a pleading, does not frame or join issues, and does not establish a "cause" in which a court may grant relief. Although the custodian

---

[8]The 1984 amendment of rule 60 limited the informal response to "factual matters." This limitation was removed in 1985, when rule 60 was again amended. (See 23 West's Ann. Cal. Rules of Court (1994 pocket supp., pt. 1) rule 60, p. 86.) Thus, under current law, the informal response may raise both factual and legal matters.

or real party in interest may choose, after the order to show cause issues, to have the informal response serve as the formal return, the two documents (informal response and return) are formally distinct and are intended to serve different purposes.

The informal response contemplated by rule 60 performs a screening function. (Cf. *Frias* v. *Superior Court* (1975) 51 Cal.App.3d 919, 924 [124 Cal.Rptr. 616] (conc. opn. of Friedman, Acting P. J.) ["Some kind of screening capability is essential to the sensible fulfillment of habeas corpus responsibility."].) Through the informal response, the custodian or real party in interest may demonstrate, by citation of legal authority and by submission of factual materials, that the claims asserted in the habeas corpus petition lack merit and that the court therefore may reject them summarily, without requiring formal pleadings (the return and traverse) or conducting an eviden-tiary hearing.[9] If the petitioner successfully controverts the factual materials submitted with the informal response, or if for any other reason the informal response does not persuade the court that the petition's claims are lacking in merit, then the court must proceed to the next stage by issuing an order to show cause or the now rarely used writ of habeas corpus. Deficiencies in the informal response do not provide a justification for shortcutting this proce-dural step.

We likewise reject petitioner's contention that appellate courts' authority to issue peremptory writs of mandate in the first instance somehow establishes that in habeas corpus proceedings appellate courts may grant relief without issuing an order to show cause or a writ of habeas corpus. Granted, the statutory schemes for mandate and habeas corpus are similar in some ways, but there are also marked differences that reveal the error of petitioner's contention.

As with the writ of habeas corpus, the California Constitution grants this court, the Courts of Appeal, and superior courts original jurisdiction to issue writs of mandate. (Cal. Const., art. VI, § 10.) The purpose of the writ of mandate is "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he [or she] is entitled, and from which he [or she] is unlawfully precluded by such inferior tribunal, corporation, board or person." (Code Civ. Proc., § 1085.) As with habeas corpus, the party seeking mandate relief makes application by filing a verified petition. (*Id.,* § 1086.) If the petition appears

---

[9]In the sense that it performs a screening function, the informal response may be analogized to a demurrer in a civil action. Because habeas corpus proceedings and civil actions differ in many fundamental ways, however, all such analogies have very limited usefulness.

sufficient on its face, the court may issue an alternative writ, which is analogous in some ways to the writ of habeas corpus or order to show cause. The alternative writ commands the respondent either "to do the act required to be performed, or to show cause before the court . . . why he [or she] has not done so." (*Id.,* § 1087.) As in a habeas corpus proceeding, the respondent or real party in interest may then file a return explaining why the petitioner is not entitled to the requested relief (*id.,* § 1089), the petitioner may then submit an answer (*id.,* § 1089.5), and an evidentiary hearing may be held to resolve contested issues of fact (*id.,* § 1090). If, after these proceedings on the alternative writ, the court concludes that the petitioner is entitled to the relief requested, the court then grants the relief by directing issuance of a peremptory writ of mandate. (*Id.,* § 1095.)

 Habeas corpus and mandate proceedings are merely analogous, not identical. (See *People* v. *Pacini, supra,* 120 Cal.App.3d 877, 883 [stating that "[h]abeas corpus proceedings differ procedurally from prerogative writ proceedings"].) One difference between the two proceedings is that issues are joined in mandate proceedings by the petition and the return (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 178 [203 Cal.Rptr. 626, 681 P.2d 893]), whereas in habeas corpus proceedings they are joined by the return and the traverse (*In re Sixto, supra,* 48 Cal.3d 1247, 1252). Also, in mandate proceedings relief is granted by issuance of a peremptory writ of mandate; in habeas corpus proceedings, relief is granted not by issuance of a writ, but by an order or judgment directing the petitioner's release from custody or alteration of the conditions of the petitioner's confinement. As we have explained, the writ of habeas corpus serves only the limited function of requiring the filing of a return.

 For our purposes, the most significant difference between the two proceedings is found in the statutory language relating to the process used to require the filing of a return. In mandate proceedings, the statutes provide that after the court receives the petition "[t]he writ may be *either* alternative *or* peremptory" (Code Civ. Proc., § 1087, italics added) and that ". . . if the application is upon due notice and the writ is allowed, *the peremptory may be issued in the first instance*" (*id.* § 1088, italics added; see *Palma* v. *U.S. Industrial Fasteners, Inc., supra,* 36 Cal.3d 171). There is no comparable statutory authority for granting relief "in the first instance" upon a petition for a writ of habeas corpus. To the contrary, as we have seen, Penal Code section 1476 requires that when presented with a habeas corpus petition stating a prima facie case upon a claim not procedurally barred, a court "must . . . grant" the writ of habeas corpus (or order to show cause).

 We have stressed, moreover, that the accelerated mandate procedure, in which a peremptory writ is issued without first issuing an alternative

writ or order to show cause, "is the exception; it should not become routine." (*Ng* v. *Superior Court* (1992) 4 Cal.4th 29, 35 [13 Cal.Rptr.2d 856, 840 P.2d 961].) And we have cautioned that the procedure "should be adopted only when petitioner's entitlement to relief is so obvious that no purpose could reasonably be served by plenary consideration of the issue—for example, when such entitlement is conceded or when there has been clear error under well-settled principles of law and undisputed facts—or when there is an unusual urgency requiring acceleration of the normal process." (*Ibid.*; see also *Alexander* v. *Superior Court* (1993) 5 Cal.4th 1218, 1222-1223 [23 Cal.Rptr.2d 397, 859 P.2d 96].)

We have never authorized extension of the accelerated mandate procedure to habeas corpus proceedings, and indeed our pronouncements on this subject establish that it may not be done. In *Adoption of Alexander S., supra,* 44 Cal.3d 857, 865, we did not say that the respondent must be given an opportunity, before a court grants habeas corpus relief, to file some sort of opposition; rather, we said the respondent must be given an opportunity to file *a return*, which is a document filed only after issuance of an order to show cause or a writ of habeas corpus. We now reaffirm what was implicit in *Adoption of Alexander S.*: a court may grant a habeas corpus petitioner final release from custody or other affirmative relief only after issuance of an order to show cause or a writ of habeas corpus.[10]

This does not mean that obtaining relief through habeas corpus proceedings must be slow or cumbersome. If the claim asserted in the petition has apparent merit and there is some urgency because the petition, for example, alleges entitlement to release on bail or challenges the validity of a contempt order, the court may require the custodian or real party in interest to submit the return to the writ or order to show cause as little as 24 hours after being served with the petition. (Pen. Code, § 1475, pars. 3-4.) Pending the outcome of the habeas corpus proceeding, the court may order that the petitioner be temporarily released from custody. (See *id.,* § 1476 [court may "admit [the petitioner] to bail, if the offense is bailable"]; *In re William M.* (1970) 3 Cal.3d 16, 22 [89 Cal.Rptr. 33, 473 P.2d 737] [minor ordered released pending habeas corpus petition's determination]; *In re Newbern* (1960) 53 Cal.2d 786, 788 [3 Cal.Rptr. 364, 350 P.2d 116] [petitioner released on own recognizance pending outcome of habeas corpus proceeding].) Once the return is received, the court may grant relief without an evidentiary hearing if there are no material contested issues of fact. (*In re Fields, supra,* 51 Cal.3d 1063, 1070, fn. 2.)

---

[10]To the extent they are inconsistent, we disapprove *In re Siegel* (1975) 45 Cal.App.3d 843 [120 Cal.Rptr. 8], *In re Noland* (1978) 78 Cal.App.3d 161 [144 Cal.Rptr. 111], and *In re Easterbrook* (1988) 200 Cal.App.3d 1541 [244 Cal.Rptr. 652].

### III

As the statement of facts indicates, the Court of Appeal in this case granted relief on a contested habeas corpus petition without issuing a writ of habeas corpus or an order to show cause. The effect was to vacate a judgment convicting petitioner of five felony offenses, to render moot petitioner's pending appeal, and to require that the entire case be retried. In so doing, the Court of Appeal erred.

This error may not be deemed harmless. Respondent was entitled to an opportunity to submit a return setting forth respondent's considered position on the facts and the law.[11] Because respondent was deprived of that right, we lack a record sufficient to evaluate the validity of petitioner's habeas corpus claims.[12] (See *In re Scott* (1994) 27 Cal.App.4th 946, 949-950 [33 Cal.Rptr.2d 27].)

The judgment of the Court of Appeal is reversed and the matter is remanded with directions to reinstate the appeal.

Lucas, C. J., Mosk, J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.

Respondent's petition for a rehearing was denied January 5, 1995, and the opinion was modified to read as printed above.

---

[11]The Attorney General has informed us that in preparing respondent's informal response, his office did not conduct the factual investigation it would have conducted had it been responding to an order to show cause. Rather, preparation of the informal response was limited to perceived flaws on the face of the petition.

[12]Because the Court of Appeal's error requires reversal in any event, and because we granted review to consider only the validity of the procedure used by the Court of Appeal, we need not and do not determine whether the petition states a prima facie case for relief. We observe, however, that a claim of ineffective assistance of counsel at trial includes two components: performance of counsel that is deficient when measured against the standard of a reasonably competent attorney and prejudice in the sense that counsel's performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (*Strickland* v. *Washington* (1984) 466 U.S. 668, 686 [80 L.Ed.2d 674, 692-693, 104 S.Ct 2052].) Here, it is questionable that petitioner has satisfied the prejudice component. The petition does not allege that petitioner has been evaluated for BWS, and it does not allege what evidence her trial counsel would have uncovered had he conducted a more thorough inquiry in this area.